**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

| | |
|---|---|
| AUSTIN DOWD, *et al.*, | Case No. 2:15–cv–136–APG–VCF |
| Plaintiffs, | <u>**ORDER AND**</u> <br> <u>**REPORT & RECOMMENDATION**</u> |
| vs. | |
| STEVEN SISOLAK, *et al.*, | MOTION TO QUASH (#8) <br> MOTION TO DISQUALIFY (#9) <br> MOTION TO DISMISS (#10) |
| Defendants. | MOTION TO AMEND (#19) |

This matter involves a putative class action arising from the Clark County Board of Commissioners' decision to adopt Ordinance 2.15.1 and abolish the Las Vegas Township Constable Office. (Sec. Am. Compl. #7). Plaintiffs include twelve Deputy Constables and Process Servers who worked for the Constable's Office. Defendants include members of the Clark County Board of Commissioners ("Board"), the Las Vegas Township Constable Office ("Constable's Office"), and the Las Vegas Metropolitan Police Department ("LVMPD").

Plaintiffs allege that the Board's decision to abolish the Constable's Office was the product of a conspiracy against the former Constable John Bonaventura, which deprived Plaintiffs of their "meaningful constitutional property interest in their employment and pay." (*Id*. at ¶¶ 3–5). Plaintiffs seek compensatory and punitive damages for violations of their constitutional rights, injunctive relief and reinstatement to their former positions, and declaratory relief stating that Ordinance 2.15.1 and the statute authorizing its adoption are unconstitutional. (*Id*. at ¶¶ 3–5, 99–101).

Four motions are before the court: (1) the Board's Motion to Dismiss (#10); (2) Plaintiffs' Motion to Amend (#19); (3) the LVMPD Defendants' Motion to Quash and/or Dismiss (#8); and the Board's Motion to Disqualify Plaintiff Robert Pool from representing his eleven co-Defendants (#9).

As discussed below, the Board's Motion to Dismiss should be granted, Plaintiffs' Motion to Amend should be denied, and the LVMPD's Motion to Quash should be granted and they should be dismissed from this action. Because the District Judge's adoption of this report and recommendation would dispose of Plaintiffs' action, the court denies the Board's Motion to Disqualify as moot and stays discovery pending a decision by the District Judge.

## I. **The Board's Motion to Dismiss**

The court begins with the Board's Motion to Dismiss. It argues that (1) the Board Defendants[1] are entitled to legislative immunity because Ordinance 2.15.1 was adopted in the sphere of legitimate legislative activity and (2) the court should abstain from adjudicating Plaintiffs' complaint under *Younger v. Harris*, 401 U.S. 37, 91 (1971) because a related state-court proceeding is pending before the Nevada Supreme Court. Both arguments are addressed below.

### A. *Legislative Immunity*

Legislators are absolutely immune from civil liability for actions that are legislative in nature. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998); *Kaahumanu v. Cnty of Maui*, 315 F.3d 1215, 1219–20 (2003). Legislative immunity protects local legislators, *see id*., and extends to claims for damages and injunctive relief. *Spallone v. United States*, 493 U.S. 265, 278 (1990); *Cmty. House, Inc. v. Boise, Idaho*, 623 F.3d 945, 959 (9th Cir. 2010). The doctrine covers "all actions taken in the sphere of legitimate legislative activity," even if the legislators' action particularly affects one individual. *Bogan*, 523 U.S. at 54.

The party asserting the immunity bears the burden of demonstrating that "such immunity is justified for the governmental function at issue." *Trevino By & Through Cruz v. Gates*, 23 F.3d 1480,

---

[1] The Board Defendants are Steven Sisolak, Mary Beth Scow, Tom Collins, Lawrence Weekly, Larry Brown, Chris Giunchigliani, Susan Brager, Jeffrey Wells, and the Board of County Commissioners.

1482 (9th Cir. 1994) (citing *Hafer v. Melo*, 502 U.S. 21, 29 (1991)). To determine whether legislative immunity applies, courts look to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S. 219, 229 (1988). Courts in the Ninth Circuit consider four factors: whether the act (1) involves *ad hoc* decisionmaking or the formulation of policy, (2) applies to a few individuals or to the public at large, (3) is formally legislative in character, and (4) bears all the hallmarks of traditional legislation. *Kaahumanu*, 315 F.3d at 1220 (citations omitted).

Applying these factors, the court finds that the Board's decision to adopt Ordinance 2.15.1 and abolish the Constable's Office is entitled to absolute legislative immunity. Plaintiffs' complaint alleges that the decision was reached in accordance with Nevada Revised Statute § 258.010(3). Additionally, Plaintiffs allege that the Board announced its decision while acting in its official capacity during public hearings on March 5, 2013, and March 19, 2013. *See* (Sec. Am. Compl. (#7) at ¶¶ 3, 29–31). The complaint also alleges that the decision involved the formulation of policy regarding "an overlap of duties and functions between the office of constable for the Las Vegas Township and the office of the Sheriff Civil Process Section." (*Id*. at ¶¶ 29–31, 49). Although the decision particularly affected Plaintiffs, there is no dispute that the Board's action has "prospective implications that reach well beyond the particular occupant[s] of the [Constable's] office." *Bogan*, 211 F.3d at 776. The court, therefore, finds that the Board is immune from suit.

The court's recommendation that the Board is entitled to absolute legislative immunity accords with the great weight of appellate authority, which holds that a public body's decision to abolish a public office by a legislative act is absolutely immune from suit. In *Bogan v. Scott-Harris*, the Supreme Court held that local officials were entitled to absolute legislative immunity when they abolished the plaintiff's position by passing a city ordinance with prospective implications beyond the current employee, despite evidence that the act was retaliatory and specifically targeted at the plaintiff. 523 U.S. at 55–6.

In *Bryant v. Jones*, an official developed a budget that eliminated a public employee's position. 575 F.3d 1281, 1306 (11th Cir. 2009). The employee alleged that the budget proposal was "an artifice for what was in fact a retaliatory personnel decision." *Id*. at 1303. The Eleventh Circuit held that the defendants were entitled to absolute legislative immunity because "the elimination of a public employment position 'may have prospective implications that reach well beyond the particular occupant of the office.'" *Id*. at 1306 (quoting *Bogan*, 523 U.S. at 56).

The Third Circuit reached an analogous conclusion in *Baraka v. McGreevey*. The poet laureate of New Jersey created "an outcry" after reading a poem, which the governor said implied that "Israelis had known about the September 11 terrorism attacks." 481 F.3d 187, 194 (3d Cir. 2007). The governor and arts counsel responded by advocating for legislation that eliminated the position of poet laureate. *Id*. The legislation passed; the poet lost his position and filed suit. The Third Circuit held that defendants were entitled to absolute legislative immunity. *Id*. at 196.

Similarly, in *Bagley v. Blagojevich*, the Seventh Circuit held that former Governor Rod Blagojevich's decision to eliminate a public position by signing a bill was entitled to absolute legislative immunity. 646 F.3d 378, 394 (7th Cir. 2011). As in this case, plaintiffs alleged that the decision to eliminate their positions was the product of a conspiracy. *Id*. at 399. The court rejected plaintiffs' claims, stating "Governor Blagojevich's elimination of the captain's position through his budget proposal and his line item veto substantively attempted to reduce management positions in order to save money. Perhaps the Governor harbored secret motives, but motives do not matter in determining whether the action is legislative." *Id*. at 394; *see also Kaahumanu*, 315 F.3d at 1220 (when determining whether legislative immunity applies, the court disregards "all considerations of intent and motive").[2]

---

[2] In an unpublished decision, the Sixth Circuit also determined that a public body's decision to abolish a public office by a legislative act is immune from suit. *See Collins v. Vill. of New Vienna*, 75 F.App'x 486 (6th Cir. 2003).

Plaintiffs' complaint parallels the allegations in *Bogan*, *Bryant*, *Baraka*, and *Blagojevich*. Like *Bogan*, *Baraka*, and *Blagojevich*, Plaintiffs allege that former Constable John Bonaventura was personally targeted by the Board in a conspiracy. Like *Bryant*, Plaintiffs allege that the Board abolished the Constable's Office under the pretext of a false policy regarding "overlap" and budgetary concerns. Like all four decisions, Plaintiffs concede that the Board's decision was legislative in nature. Ordinance 2.15.1 was adopted after two public meetings and in accordance with Nevada Revised Statute § 258.010(3).

The only fact distinguishing this action from *Bogan*, *Bryant*, *Baraka*, and *Blagojevich* provides additional support for dismissal. In those cases, the plaintiffs alleged that a legislative body acted unlawfully because the body conspired directly against the plaintiffs. Here, Plaintiffs allege that the Board conspired against Mr. Bonaventura, who is a non-party, and indirectly harmed Plaintiffs by adopting Ordinance 2.15.1. This fact militates against a finding that the Board's action was an *ad hoc* decision directed solely at Plaintiffs. *See Kaahumanu*, 315 F.3d at 1220. The court is unpersuaded that the Board's action was directed at specific employees, as Plaintiffs now argue.

Plaintiffs contend that the Board is not immune from suit because this case involves a conspiracy to violate the constitution. (Doc. #23 at 13). The court disagrees. The operative complaint shows that the Board's decision occurred "in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54. The Constable's Office was abolished after two public hearings and in accordance with the applicable state statute. Actions taken within the sphere of legitimate legislative activity are committed to the discretion of legislative branch and are beyond the judicial branch's powers of review. *Id*. at 55 (citing *Tenny v. Brandhove*, 341 U.S. 367, 377 (1951)). The existence of an alleged conspiracy does not render a legislator's decision actionable. *Kaahumanu*, 315 F.3d at 1220; *Blagojevich*, 646 F.3d at 394.

Therefore, the Board's Motion to Dismiss should be granted and the Board Defendants should be dismissed because they are absolutely immune from suit.

5

### B.     Younger *Absention*

Plaintiffs' action should also be dismissed under *Younger v. Harris*. In *Younger*, the Supreme Court held that a federal district court must abstain from adjudicating an action when (1) there are ongoing state judicial proceedings, (2) the proceedings implicate important state interests, and (3) the state proceedings provide the plaintiff with an adequate opportunity to raise federal claims. *Middlesex v. Cnty Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982); *Dubinka v. Judges of the Superior Court*, 23 F.3d 218, 223 (9th Cir. 1994).

*Younger* mandates dismissal here. First, there is no dispute that an appeal regarding the Board's decision to abolish the Constable's Office is pending before the Nevada Supreme Court. Plaintiffs' complaint concedes this fact. (Sec. Am. Compl. (#7) at ¶ 44). Second, there is no question that the state-court proceeding implicates important state interest regarding the Board's powers and the abolition of the Constable's Office.

The only dispute involves *Younger's* third prong. Plaintiffs assert that abstention is inappropriate because the state-court proceeding involves different plaintiffs. (*Id.*); (Doc. #23 at 16). This argument fails as a matter of law. Like the state-court action, this action challenges the validity of the Board's decision. Here, Plaintiffs' request declaratory relief stating that Ordinance 2.15.1 and Nevada Revised Statute § 258.010(3) are unconstitutional. Plaintiffs also request injunctive relief abrogating the Board's decision and reinstating Plaintiffs' to their former positions. (Sec. Am. Compl. (#7) at ¶¶ 99–104).

*Younger* requires abstention in these circumstances. If this court were to grant Plaintiffs' requests for declaratory and injunctive relief, the state-court proceeding would be moot. Alternatively, the outcome of the state-court proceeding will impact the declaratory and injunctive relief sought here. *Younger* abstention protects our system of federalism by avoiding this type of cross-forum interference. Plaintiffs

argument that *Younger* is inapplicable because the state-court proceeding involves different plaintiffs fails as a matter of law.

## II.      **Plaintiffs' Motion to Amend**

The parties' filings present a second question: whether Plaintiffs should be granted leave to file a Third Amended Complaint. Plaintiffs move to amend their complaint to add a First Amendment retaliation claim and three additional Plaintiffs. The court's analysis begins with the governing law.

### A.      *Legal Standard*

Federal Rule of Civil Procedure 15 governs amended and supplemental pleadings. *See* FED. R. CIV. P 15. Where, as here, more than twenty-one days have elapsed since serving the original pleading, a party "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). In the Ninth Circuit, courts deny leave to amend if (1) it will cause undue delay, (2) it will cause undue prejudice to the opposing party, (3) the request is made in bad faith, (4) the party has repeatedly failed to cure deficiencies, or (5) the amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

When determining whether amendment would be futile, the court considers whether the proposed complaint would survive a motion to dismiss under Rule 12(b)(6). *Farina v. Compuware Corp.*, 256 F. Supp. 2d 1033, 1061 (9th Cir. 2003) (citing *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim upon which relief can be granted," which is also "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible if it contains sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

**B.**     *Analysis*

The court recommends denying Plaintiffs' motion to amend for two reasons. First, Plaintiffs' proposed First Amendment claim is futile. To state a claim for First Amendment retaliation, Plaintiffs must plausibly allege that (1) they spoke on a matter of public concern, (2) as a public employee, (3) Plaintiffs' protected speech was a substantial or motivating factor in their adverse employment action, (4) Defendants lacked an adequate justification for treating Plaintiffs differently from other members of the general public, and (5) the Board would not have terminated Plaintiffs' employment even absent the protected speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Plaintiffs' proposed First Amendment claim fails as a matter of law because it provides no factual support for any of the five elements listed above. Plaintiffs' allegations typify the "unadorned, the-defendant-unlawfully-harmed-me accusation" that *Iqbal* and *Twombly* prohibit. *Iqbal*, 556 U.S. 678. In sum, the proposed Third Amended Complaint alleges the following:

> This Third Amended Complaint further seeks redress for First Amendment retaliation and continuing conspiracy subsequent to wrongful termination and the filing of this litigation wherein Defendants have on the basis of this litigation, violated Plaintiffs First Amendment Right to seek redress and have intentionally restricted the application and employment of Plaintiffs within similar law enforcement and process server position within Clark County.
>
> [. . .]
>
> Plaintiffs allege that since the filing of this case, Defendants, individually and in conspiracy, have in retaliation, restricted the application and employment of the Plaintiff in similar positions in Clark County.

(Doc. #19-1 at ¶¶ 6, 92).

Second, amendment is futile because Plaintiffs' proposed Third Amended Complaint seeks to add three additional Plaintiffs to existing claims that fail as a matter of law. As discussed above, the Board Defendants are absolutely immune from suit because the Board's decision to abolish the Constable's

Office occurred "in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54. *See supra* § I. Adding additional Plaintiffs to these claims will not render the Board's decision actionable.

Additionally, it is futile to add three Plaintiffs to the existing claims against the LVMPD Defendants because the allegations against the LVMPD Defendants fail as a matter of law. The Supreme Court's decisions in *Iqbal* and *Twombly* require a complaint to contain, *inter alia*, "sufficient factual matter, accepted as true" that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint's legal conclusions are no substitute for "sufficient factual" matter because they are not accepted as true. *See id*. ("[T]he tenant that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions . . . [A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").

The operative complaint contains the following five factual allegations against the LVMPD Defendants: (1) Defendant Gillespie said that Metro and the Constable's Office could not do "the same job . . . under the 2014–2015 fiscal budget, (2) Commissioner Giunchiliani admitted to violating the Open Meeting Law when she spoke with Gillespie, (3) Defendant Lombardo appointed Defendants Forbuss and Hammick to manage the transition of the Constable's Office into Metro, (4) Gillespie, Lombardo, Forbuss, and Hammick "furthered the conspiracy by engaging in personal meetings, as well as engaging in personal and email communications indicating that the Plaintiffs would be retained as Deputy Constables and Process Servers, when such was not true," and (5) Metro issues a press release with the Board stating that Metro and the Constable's Office will merge but the Constable's Office will remain a separate entity. (Sec. Am. Compl. (#7) at ¶¶ 26, 33, 45, 46, 48). These allegations do not allow "the court to draw the reasonable inference that the LVMPD Defendants are liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Therefore, the court recommends that Plaintiffs' Motion to Amend be denied.

9

### III. The LVMPD Defendants' Motion to Quash

The court turns to the LVMPD Defendants' Motion to Quash and/or Dismiss.[3] The LVMPD Defendants argue that Plaintiffs' service of process should be quashed, and their complaint dismissed, because Plaintiffs' paralegal left a copy of the summons and complaint with a legal assistant at the Las Vegas Metropolitan Police Department who was unauthorized to accept service of process on behalf of any Defendant.

#### A. *Legal Standard*

A federal court lacks personal jurisdiction over a defendant until the defendant is served under Federal Rule of Civil Procedure 4. *Direct Mail Specialists v. Eclat Computerized Techs., Inc*., 840 F.2d 685, 688 (9th Cir. 1988). Rule 4 establishes different procedures for serving different types of defendants. Generally, to effect service on an individual-capacity defendant or an official-capacity defendant, the plaintiff must deliver a copy of the summons and complaint to the individual personally. *See* FED. R. CIV. P. 4(e), (i); *see also Howerton v. Gonzales*, No. 2:13–cv–874–GMN–VCF, 2014 WL 584911, at *2 (D. Nev. Feb. 11, 2014) (find insufficient service of process where a plaintiff attempted to serve LVMPD by leaving a copy of the summons and complaint with "Sarah—front desk").

To effect service on "a municipal corporation, or any other state-created governmental organization that is subject to suit must be served by" either "delivering a copy of the summons and of the complaint to its chief executive officer" or "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." FED. R. CIV. P. 4(j)(2). In Nevada, a corporation must be served by "delivering a copy of the summons attached to a copy of the complaint" to

---

[3] The LVMPD Defendants are Douglas Gillespie, Joseph Lombardo, Richard Forbuss, Jeff Hammick, each of whom Plaintiffs sued in their official capacity, the Las Vegas Metropolitan Police Department, and the Las Vegas Township Constable Office.

10

"the registered agent" or "any officer" of the corporation. NEV. R. CIV. P. 4(d)(1).

The burden of establishing proper service of process rests on the plaintiff. *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). If, as here, the plaintiff does not satisfy its burden of demonstrating sufficient service of process, the court may quash service or dismiss the action. *SHJ v. Issaquah School Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006). The court's choice between dismissal and quashal is discretionary. *Stevens v. Sec. Pac. Nat'l Bank, et al.*, 538 F .2d 1387, 1389 (9th Cir. 1976).

**B.**  *Analysis*

The court finds that Plaintiffs failed to satisfy their burden of establishing proper service of process for three reasons. First, Defendants do not dispute that Ms. Lawson, the legal secretary who received Plaintiffs' summons and complaint, is unauthorized to accept service of process on behalf of any Defendant.

Second, Plaintiffs assert that the LVMPD Defendants waived their right to challenge the sufficient of service of process because the LVMPD Defendants filed a Motion to Quash and/or Dismiss. This argument fails as a matter of law. Federal Rule of Civil Procedure 12(b)(5) permits a defendant to move for dismissal for "insufficient service of process." Under Rule 12(h), a defendant waives this defense only if the defendant fails to assert the defense in a responsive pleading or in the defendant's first Rule 12(b) motion. *See* FED. R. CIV. P. 12(g), (h); *Schnabel v. Lui*, 302 F.3d 1023, 1033 (9th Cir. 2002).

Plaintiffs contend that the LVMPD Defendants cannot assert a Rule 12(b)(5) defense because the distinction between a general and a "[s]pecial appearance no longer exists in Nevada." (Doc. #21 at 10). This argument fails as a matter of law. Rule 12(b)(5) permits a party to move to dismiss for "insufficient service of process," provided that the party raises the defense in a responsible pleading or asserts it in a motion. *See* FED. R. CIV. P. 12(b)(5), (g), (h). The LVMPD Defendants complied with these rules. On May 19, 2015, the LVMPD Defendants appeared in this action and moved to quash and/or dismissed for

insufficient service of process.

Third, Plaintiffs assert that the LVMPD Defendants' Motion to Quash should be denied because opposing counsel, who also represents the Board, did not moved to quash on the Board's behalf. This argument also fails as a matter of law. Rule 4 requests Plaintiffs to serve each individual defendant personally and each corporate defendant through their offices or registered agents. *See* FED. R. CIV. P. 4(j)(2); NEV. R. CIV. P. 4(d)(1). No provision within Rule 4 permits what Plaintiffs request: vicarious service of process through a co-defendants' counsel.

Because Plaintiffs failed to satisfy their burden of establishing sufficient service of process, the court must decide whether to merely quash Plaintiffs' service or recommend dismissing the action against the LVMPD Defendants. *See Stevens*, 538 F.2d at 1389 (stating the choice between quashal and dismissal is discretionary). Generally, dismissal is not warranted if: "(a) the party that had to be served personally received actual notice, (b) the defendant would suffer no prejudice from the defect in service, (c) there is justifiable excuse for the failure to serve properly, and (d) the plaintiff would be serenely prejudice if his complaint were dismissed." *Broke v. Heckler*, 739 F.2d 444, 447 (9th Cir. 1984). Here, however, the court recommends dismissal because Plaintiffs' Motion to Amend should be denied and the operative complaint contains no plausible claims against the LVMPD Defendants. *See supra* § II.

Therefore, the LVMPD's Motion to Quash and/or Dismiss should be granted and the LVMPD Defendants should be dismissed from this action.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that the Board Defendants' Motion to Dismiss (#10) be GRANTED.

IT IS FURTHER RECOMMENDED that Plaintiffs' Motion to Amend (#19) be DENIED.

IT IS FURTHER RECOMMENDED that the LVMPD Defendants' Motion to Quash (#8) be GRANTED and the LVMPD Defendants be dismissed from this action.

IT IS ORDERED that Defendants' Motion to Disqualify (#9) is DENIED as moot with leave to refile following a decision by the District Judge on this report and recommendation.

IT IS ORDERED that the Parties' Proposed Discovery Plan and Scheduling Order is REJECTED and discovery is STAYED pending a decision by the District Judge on this report and recommendation.

DATED this 12th day of August, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE